**STATE of Missouri, Respondent,**

v.

**Max Leon ALEXANDER, Appellant.**

No. 67326.

Supreme Court of Missouri,
En Banc.

Feb. 18, 1986.

Patrick J. Berrigan, Sean D. O'Brien, Kansas City, for appellant.

William L. Webster, Atty. Gen., Michael H. Finkelstein, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted of twice forcibly raping (§ 566.030, RSMo Cum.Supp.1984) his thirteen-year-old niece, and of sodomizing (§ 566.060, RSMo Cum.Supp.1984) her eleven-year-old sister, appellant was sentenced to three consecutive fifteen year terms of imprisonment. Section 558.011.1(2), RSMo Cum.Supp.1984.

No challenge is made to the sufficiency of the evidence, instead appellant asserts as reversible error the propounding of an allegedly improper question during cross-examination of appellant by the state. Though objection thereto was sustained and curative instruction given, the court in its discretion refused to order a mistrial and this, appellant argues, requires reversal. We do not agree.

The crimes occurred during April and May of 1983. On Easter weekend, the two girls with their mother left the family home and moved into appellant's house. Shortly after moving, the mother with appellant, who is the brother of the children's father, began going upstairs to the bedroom shared by the sisters. They had the girls play a "game" involving performance of various sexual acts in which appellant made advances to the girls and sexual interplay resulted. These perversions were not only encouraged but were in part forced upon the girls by their mother for when either child refused she would be whipped with a hanger or plastic pipe. Thus, the evidence presented a tragic tableau of maternal perfidy and carnal imposition upon the children, strongly supportive of the verdict.

In May of 1983 a state Division of Family Services caseworker visited the home in response to a call to the Child Abuse Hotline from another man living in appellant's house. On further investigation by the Independence, Missouri police the girls were taken into protective custody and subsequently released to the Division of Family Services.

Near the end of the four-day trial, during cross-examination of appellant, the prosecuting attorney posed the following question:

Q. Isn't it true that you've had some experience with the juvenile court taking the children away from you for sexually abusing them?

*Defense Counsel:* I'm going to object to that. May we approach the bench?

The ensuing exchange occurred out of the hearing of the jury:

*Defense Counsel:* I move for a mistrial. It's certainly an improper question. It signifies potential crimes of which he is not charged with here. There is no discovery in this case by the State or by any other party that that in fact is the case, and it is clearly prejudicial to the defendant.

*Prosecutor:* Your honor, I admit it is prejudicial to the defense, but any evidence is prejudicial to the defense at this stage. The State is attempting to show that this man has some understanding of the system and that understanding has caused him to do certain things. I realize I may be bound by his answer.

*The court:* This is not in relation to these two kids that you're talking about, to the two girls that are in this case?

*Prosecutor:* No, It is his natural son.

*The court:* Well, I'll sustain the objection. The request for a mistrial is denied, and I will instruct the jury if you so request to disregard ...

After brief discussion, defense counsel requested that the jury be so instructed and the court directed as follows:

[t]he jury is instructed to disregard the last question or statement made by the prosecutor.

In addition, the court (prior to deliberation) gave instruction MAI–CR2d 2.02, containing these further relevant warnings:

[a] question is not evidence, and may be considered only as it supplies meaning to the answer ... [and] [y]ou will also disregard any answer or other matter which the court directs you not to consider ...

Finally, in closing argument, the prosecutor assured the jury that the evidence he had presented was "[e]verything I had."

The cause comes to us on certification from the Court of Appeals—Western District under Rule 83.01 and is considered here as though on original appeal. Mo. Const. art. V, § 10.

The propriety of the question at issue must first be analyzed under established evidentiary rules. There is little doubt, judging from the colloquy above, that this was an improper attempt, either directly or indirectly, to attack appellant's character by showing a specific act of misconduct which apparently had not resulted in conviction. It did not come within any exception to the general rule against proof of separate crimes by the appellant. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (1954).[1] We have long since abolished the "morality rule" when appellant testifies but does not offer evidence in support of his character, and the prosecutor here made no attempt to justify the question as a permissible attack on appellant's reputation for truth and veracity. *State v. Williams,* 337 Mo. 884, 87 S.W.2d 175 (1935). Having concluded that the question was improper, we now examine whether the curative action by the trial judge was so inadequate as to require reversal.

When determining if the trial court, in refusing a mistrial, so abused its discretion that reversal is appropriate we weigh heavily the court's superior position "to evaluate the prejudicial effect and possibility of its removal by action short of a mistrial." *State v. Camper,* 391 S.W.2d 926, 928 (Mo.1965); *See also State v. Harris,* 547 S.W.2d 473 (Mo. banc 1977).

The principal authority suggested by appellant in support of his position is *State v. Dunn,* 577 S.W.2d 649 (Mo. banc 1979). There it was held that such abuse could exist in *failure to sustain objection* to a question posed to a appellant which referred to collateral instances of prior criminal conduct. In *Dunn* the trial court not only mistakenly overruled an objection to such question but permitted elicitation of

---

**1.** The exceptions are when such evidence is used to establish motive, intent, the absence of mistake or accident, a common scheme or plan or

the identity of the person charged. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954).

an answer. Appellant in *Dunn,* standing accused of car theft, was asked on cross-examination whether he had committed the following crime particularized in detail as to date and place: "Mr. Dunn, on February the 17th, 1975, did you steal property from an automobile in St. Louis County." *Id.* at 650. Defense counsel immediately objected but the trial court overruled the objection and required appellant to answer. We held that cross-examination of "a defendant as to alleged prior acts of misconduct, *particularly where details are stated* and the acts are somewhat similar to the case on trial ... lends itself to the creation of substantial prejudice ..." *id.* at 653 (emphasis added), concluding that the appellant had been prejudiced by the trial court's overruling the objection.

Significantly in the case at bar, unlike *Dunn,* the trial judge did not approve the question (by overruling the defense objection) nor allow the question to be considered by the jury. Further, unlike *Dunn,* no answer to the question was permitted. Instead, after sustaining the objection, the trial judge promptly admonished the jury to disregard the question. The sufficiency of such immediate corrective action is generally within the sound discretion of the trial court. *State v. Smith,* 355 Mo. 59, 194 S.W.2d 905, 907–908 (1946). Additionally, the propounded question did not contain the "details" found objectionable in *Dunn.* 577 S.W.2d at 651. *See also State v. Pierce,* 595 S.W.2d 748 (Mo.App. 1980). A similar contention was recently found by this Court to be meritless where the court sustained objection and instructed the jury to disregard a question that lacked the specific detail, such as time and place, of the alleged occurrence. *State v. Moses Young,* 701 S.W.2d 429 (Mo.1985). There, on cross-examination, appellant on trial for capital murder was asked, "Mr. Young, how many people have you shot?" As noted above, objection to the inquiry was sustained and the jury instructed to disregard and, as in the case at bar, the court denied a requested mistrial.

In the case sub judice, not only was no date or time referenced but the subject of the question was on its face apparently related to matters within the context of the case. From the text of the question the jury could have inferred that appellant's "experience" with having had "*the* children" taken away from him for "sexually abusing *them*" referred to matters involving the children in this case. (Emphasis added.) While this does not render the question permissible, this latent ambiguity reinforces the trial court's decision to deny the required mistrial. Only the prosecutor's reference to "the juvenile court" might have implied something different and the trial judge was in the best position to determine the effect of that oblique reference.

Finally, appellant argues that subjective bad faith of the prosecutor was demonstrated during the conference at the bench and reversal is necessary as a means of curtailing prosecutorial misconduct. As previously discussed, the challenged question on its face seemed to refer to the children involved here. During the colloquy out of the jury's hearing the court learned that such was not the case, instead the prosecutor sought to impeach appellant by demonstrating his "understanding of the system and that understanding has caused him to do certain things." This explanation failed to justify the question and appellant's objection was sustained but the court deemed it unnecessary to order a mistrial. While we do not condone the question as propounded, under the circumstances we find no abuse of discretion in the action of the trial court and decline appellant's invitation to heavy handedly reverse a valid conviction and judgment as a warning against similar questions during cross-examination in other cases.

The evidence supporting the jury's verdict was substantial and convincing and nothing in the issues presented on appeal warrant reversal.

Judgment affirmed.

BILLINGS and DONNELLY, JJ., and KAROHL, Special Judge, concur.

BLACKMAR, J., dissents in separate opinion.

HIGGINS, C.J., and WELLIVER, J., dissent and concur in separate dissenting opinion of BLACKMAR, J.

ROBERTSON, J., not sitting.

BLACKMAR, Judge, dissenting.

### I.

I believe that the dissenting judge in the Court of Appeals misused the certification process (Mo. Const., art. V, § 10), because there is no conflict between the cases he cites[1] and the opinion of the Court of Appeals. In each of the three cases, a conviction was reversed because of prosecutorial misconduct in seeking to bring the defendant's prior behavior to the attention of the jury. Those cases cannot be in conflict with a decision which reaches the same result. They are limited to their particular facts. Anything beyond is dicta. The presence of possibly inconsistent dicta does not justify the certification of a conflict. There is a conflict only if the ratio decidendi of the earlier case requires a different decision in the certified case. A judge of the Court of Appeals should not certify a case to us as conflicting simply because he differs with his colleagues about the result.

### II.

I concede this Court's undoubted power to take a certified case as on original appeal, even though no genuine conflict is present. (Mo. Const., art. V, § 10).

The principal opinion concedes that the prosecutor was guilty of misconduct in insinuating to the jury that the defendant has been guilty of prior sexual abuse of children. The attempt was willful and brazen. Similar misconduct has been consistently condemned.[2]

The showing of prior sexual deviation is highly prejudicial to a person held to answer sexual charges. The trial judge's sustaining of the objection and the cautionary instruction are of dubious value in erasing the suggestion from the jury's mind. Judges should proceed against flagrant prosecutorial misconduct. If the trial court is unwilling to act, appellate courts should. There is a time to defer to the trial judge, and a time to take action in order to instill a feeling of confidence in trial procedures.

The severity of the sentence (consecutive 15 year terms) is a matter to consider. Juries often are repelled by cases involving pedophilia, especially where there is intimation of persistent offending. Even if the evidence of guilt is overwhelming, we must consider the possibility that the jury enhanced the sentence because of a feeling that the defendant was a persistent offender.

At the January Session we retransferred the case of *State v. Hornbeck*, 702 S.W.2d 90 (Mo.App.1986), in which the prosecutor deliberately sought to suggest to the jury that defendant's attorney had participated with the defendant in a conspiracy to obstruct justice by preventing a witness from testifying. We left in place a Court of Appeals opinion directing a new trial because of prosecutorial misconduct. In *Hornbeck* the trial judge overruled the defendant's objection, whereas here the objection was sustained, but this difference is not enough to justify a different result.

The judgment of conviction should be reversed and the case remanded for retrial.

---

1. *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979); *State v. Pierce*, 595 S.W.2d 748 (Mo.App. 1980); *State v. Cleveland*, 583 S.W.2d 263 (Mo. App.1979).

2. *See, e.g., State v. Siems*, 535 S.W.2d 261 (Mo. App.1976) (sodomy case reversed and remanded for a new trial after the prosecutor asked witnesses about rumors that the defendant had engaged in such immoral conduct as wife-swapping), and the cases cited in Note 1, *supra.*