STATE of Missouri,
Plaintiff-Respondent,

v.

Antonio CAROTHERS,
Defendant-Appellant.

No. 50055.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 1, 1986.

Motion for Rehearing and/or Transfer
Denied April 29, 1986.

Application to Transfer Denied
June 17, 1986.

Court of the City of St. Louis entered judgment on the jury's verdict and sentenced the appellant to thirty-five years imprisonment. We reverse and remand.

The appellant contends the trial court erred by allowing the state to cross-examine the appellant on his knowledge of PCP. The appellant argues his knowledge of PCP was collateral to the crime which he was charged and, as such, the state was bound by his answers regarding his recent knowledge of the drug. He also claims that the state improperly cross-examined him regarding an arrest in Arkansas which never resulted in a conviction. We agree.

When a defendant chooses to testify, he places his credibility in issue and he may be impeached by prior criminal convictions. *State v. Clayburne*, 592 S.W.2d 282, 283 (Mo.App.1979); *State v. Williams*, 492 S.W.2d 1, 6 (Mo.App.1973). His credibility, however, may not be attacked by showing a mere arrest, investigation, or criminal charge which did not result in a conviction. *Clayburne*, 592 S.W.2d at 283. Nevertheless, specific instances of unconvicted conduct may, in the discretion of the trial court, be inquired into during cross-examination if relevant to impeach the veracity of the defendant. *State v. Cleveland*, 583 S.W.2d 263, 266 (Mo.App.1979). However, the defendant's answer with regard to his knowledge or denial of the questioned conduct is binding on the state and precludes further inquiry or extrinsic proof. *Clayburne*, 592 S.W.2d at 284, *Williams*, 492 S.W.2d at 4.

In the present case, the appellant raised the defense of involuntary intoxication. On direct, he testified that he had smoked a cigarette which the victim gave him to light while they were returning from a liquor store. After smoking the cigarette for awhile, the appellant threw it away. When the victim asked for it back and learned of the appellant's actions, he became violent and stated that the cigarette had cost him ten dollars. From the cigarette's price, the appellant realized that he must have smoked the drug PCP.

Henry Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Appellant Antonio Carothers was convicted by a jury of murder in the second degree, Section 565.004, RSMo 1978, and carrying a concealed weapon, Section 571.-030.1, RSMo Cum.Supp.1984. The Circuit

On cross-examination, the appellant again testified that he knew that he had smoked PCP because of the cigarette's price. Over the appellant's objection that the state was attempting to show evidence of other crimes, the state asked the appellant how he knew that. The appellant responded that he knew the price of PCP from the streets. He also testified that he had not seen any PCP since high school and that he did not have any friends who possessed, sold, or smoked the drug.

Thereafter, the state attempted to impeach the appellant in the following manner:

Q. Isn't it true in early June of '82 you took a trip with Carl [Morris] and [the victim] and another man out to Los Angeles?

A. Yes, it is.

Q. Isn't it true on the way back from Los Angeles on the way back to St. Louis an ...

MRS. ADLER: Objection to the relevancy.

MISS VOSSMEYER: I'm tying it in.

COURT: The relevancy is getting strained.

MISS VOSSMEYER: Isn't it true on the way back from Los Angeles you also were stopped in Walnut Ridge, Arkansas?

A. Yes.

Q. And isn't it true the reason you all got stopped in Walnut Ridge, Arkansas is that ...

MRS. ADLER: Objection.

(Out of the hearing of the jury the following takes place.)

MRS. ADLER: Whether the Defendant has ever been arrested for PCP or possession of drugs is not admissable [sic] on any issue that's been raised here. The only issue that can be brought up is Mr. Carothers reputation for turbulence and violence. The case law indicates ...

COURT: But this ...

MISS VOSSMEYER: I have no intention on going after that, I'm going to go after Carl Morris' [sic], his knowledge of Carl Morris ...

MRS. ADLER: Wait a second, if she's going off on the arrest of Carl Morris on PCP, that's totally irrelevant.

COURT: The thing is he raised the issue of PCP and his knowledge and the fact he was 'wacked off'. Once he raises the issue and then says he didn't know anything about it, I think that raises the circumstance of the State to bring in his association with the knowledge.

MRS. ADLER: But whether Carl Morris' [sic] is a dealer of PCP and has knowledge, I object to anything about that.

COURT: Overruled.

(Back within the hearing of the jury the following takes place.)

MISS VOSSMEYER: Isn't it true the car was stopped in Walnut Ridge, Arkansas, when Ray McKinney there for some reason freaked out and got out and flagged the police?

A. Yes.

Q. Isn't it true that Carl Morris had nine little bottles of PCP in his trunk which he had purchased for one thousand dollars a piece in Los Angeles and was transporting back to St. Louis?

A. I don't know.

MRS. ADLER: Objection it's outside his knowledge.

COURT: Overruled.

MISS VOSSMEYER: Were you there when the car was stopped?

A. Yes.

Q. Were you and he and Ray and the other man all questioned?

A. Arrested.

Q. Was Carl charged?

MRS. ADLER: Objection to the relevancy of what happened to Carl and was in Carl's truck [sic].

COURT: Overruled.

Q. Are you saying you were arrested but you don't know what was going on?

A. We was arrested and questioned.

Q. You don't know why you were arrested?

A. No, I don't.

Q. You don't know that this PCP, nine bottles of this stuff, were in Carl Morris', your friends [sic] trunk, the man you had gone to Los Angeles with and were coming back to St. Louis with?

A. No, I didn't.

Q. You had no knowledge of any of that?

A. No.

■ Under these circumstances, the state exceeded the bounds of proper cross-examination by inquiring into the appellant's arrest in Arkansas, an arrest which resulted in the appellant's release twenty hours later. Such an inquiry was entirely unrelated to the issue whether the appellant voluntarily or involuntarily ingested PCP on the evening of the victim's murder. Nor was the state's inquiry relevant to impeach the appellant's character for truth and veracity. *Cleveland,* 583 S.W.2d at 266.

■ The purpose of the state's inquiry was to impeach the appellant's knowledge of PCP. This was a non-issue. The appellant did not invite such impeaching evidence during his direct examination. Indeed, the appellant never disavowed any knowledge of PCP on direct but freely admitted his awareness of the drug. Moreover, even if the appellant opened the door on direct examination, the state was bound by the appellant's answers on the collateral issues regarding his knowledge of PCP bottles and whether his friends possessed or sold PCP. *Clayburne,* 592 S.W.2d at 284. Since the state was bound by the appellant's answers, the state's cross-examination went astray by inquiring into the appellant's arrest in Arkansas. Such an inquiry was inherently prejudicial. Although the state failed to establish any of the allegations made on cross-examination, the state succeeded to insinuate that the appellant was involved in the illegal possession and transportation of PCP because he was with Carl Morris in Arkansas.

We do not address the appellant's remaining points on appeal because it is unlikely that they will reoccur during remand. We also note that the state admitted during oral argument before this court the error in Instruction No. 5 and with that admission, we recognize that the mistake will not repeat during retrial.

Reversed and Remanded.

CRANDALL, P.J., and KELLY, J., concur.